**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARLES E. KEMP,<br><br>   Plaintiff<br><br>v.<br><br>ROMEO ARANAS, et. al.,<br><br>   Defendants | Case No.: 3:19-cv-00582-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 27 |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 27, 29-1 to 29-7, errata at ECF Nos. 35, 36-1.) Plaintiff filed a response. (ECF No. 39.) No reply brief was filed.

After a thorough review, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 5.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*)

1    The court screened Plaintiff's complaint and allowed him to proceed with an Eighth

2 Amendment deliberate indifference to serious dental needs claim against Donald Poag[1], Brian

3 Egerton, and Russelle Donnelly. (ECF No. 4.)

4    Defendants move for summary judgment, arguing: Plaintiff's claim against Poag is

5 barred by the statute of limitations; Defendants were not deliberately indifferent to Plaintiff's

6 serious dental needs; and Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

8    The legal standard governing this motion is well settled: a party is entitled to summary

9 judgment when "the movant shows that there is no genuine issue as to any material fact and the

10 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

11 *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

12 evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

13 *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

14 of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

15 judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

16 other hand, where reasonable minds could differ on the material facts at issue, summary

17 judgment is not appropriate. *Anderson*, 477 U.S. at 250.

18    "The purpose of summary judgment is to avoid unnecessary trials when there is no

19 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

20 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

21 of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

22 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

---

[1] Mistakenly identified by Plaintiff in the complaint as Poeg.

2

one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

**A. Dental Evidence**

On July 7, 2004, Plaintiff went to sick call complaining of discomfort to tooth 14. He was scheduled to have the tooth filled. (ECF No. 29-7 at 2.) He received dental treatment on July 20, 2004. (*Id.*)

On March 16, 2004, he was seen for a complaint of a broken tooth and it appears he received treatment that day. (*Id.*)

On May 3, 2007, Plaintiff sent a kite to see the dentist for a toothache that was keeping him from sleeping. (ECF No. 29-1 at 46.) The response said he was scheduled to see the dentist and would receive an appointment slip. (*Id.*)

Plaintiff appears to have seen the dentist on May 14, 2007, and received treatment. He was instructed to re-kite if his pain returned. He was also instructed to write a kite for a new filling for tooth 30. (ECF No. 29-7 at 2.)

On May 18, 2007, Plaintiff sent a kite asking to have his tooth repaired. He was told he was scheduled and would receive an appointment slip. (*Id.* at 445)

Plaintiff saw the dentist again on June 19, 2007. (ECF No. 29-7 at 2.)

4

Plaintiff sent a kite on September 14, 2007, asking to see the dentist to get his tooth fixed as it was painful and making it difficult to sleep. The response states that Plaintiff was scheduled and would receive an appointment slip. (ECF No. 29-1 at 42.)

His next kite was approximately five years later, on December 4, 2012. (*Id*. at 6.) Plaintiff stated that he had several teeth with cavities and asked to get them fixed or repaired. The response indicates that Plaintiff was seen. (*Id*.)

Plaintiff saw the dentist on May 21, 2013. He received an x-ray and treatment. (ECF No. 29-7 at 2.)

On January 20, 2014, Plaintiff sent a kite to see the dentist, stating he needed several teeth to be filled and his teeth hurt with hot or cold, and it was affecting his breath. (ECF No. 34 at 11.) There was no official response to the request, but it is stamped received January 20, 2014.

On January 26, 2016, Plaintiff filed an informal level grievance, assigned grievance number 2006-30-15976, regarding dental care. He wrote that he had experienced 15 years of deliberate indifference to his dental health. The last kite response he received three years prior said that he was on the list to be seen. He claimed that his teeth were rotting and he was in pain. He asked for an outside dental appointment, $5000 per tooth pulled and a dental implant to replace each tooth pulled, and a minimum of $60,000 for pain and suffering. (ECF No. 29-3 at 17; ECF No. 39 at 28-30.) Diane Ballantyne responded to the informal level grievance, and he was advised to submit a kite requesting a dental appointment or to go to sick call if it was an emergency. (ECF No. 29-3 at 17; ECF No. 39 at 27.)

On March 1, 2016, Plaintiff filed a first level grievance stating had attached three kites as exhibits to show that the dental department misinformed and lied to prison staff. He described the exhibits as a kite prior to July 11, 2008; a carbon copy of a kite sent to dental on

December 4, 2012, to which he never received a response; and a kite requesting dental work prior to January 22, 2014. He claimed that the July 11, 2008, kite response said not to continue to send additional kites because it takes up valuable time from dental staff and delays scheduling. The January 22, 2014 kite said that the previous kites had been received and Plaintiff had been placed on the waiting list. He asserted that his teeth were so rotted that the only choice was to pull them out. (*Id.* at 18.)

Katherine Hegge responded that Plaintiff was instructed at the informal level to go to sick call for an emergency, or send another kite for dental care. (*Id.*)

Plaintiff filed a second level grievance on June 22, 2016. Plaintiff claimed that his exhibits demonstrated that he had requested dental care. Dr. Romeo Aranas responded to the second level grievance stating that he did not send a kite requesting an appointment since the last time he was seen. He was instructed to submit a kite if he wanted an appointment or come to sick call for a dental emergency. (*Id.* at 19; ECF No. 39 at 19-26.)

On December 12, 2016, Plaintiff submitted a kite to see the dentist, stating there was black stuff on his teeth and gums and he was in extreme pain. He requested to see the dentist as soon as possible. (ECF No. 29-4 at 60.)

Plaintiff sent a kite on February 14, 2017, stating that he went to sick call on December 12, 2016, to request to see a dentist to have some teeth filled. He said he was in extreme pain and wanted to see the dentist to get them fixed. The response states that he was scheduled for an x-ray and exam on February 15, 2017. (ECF No. 29-4 at 59.)

Plaintiff sent another kite on February 21, 2017, stating that he went to sick call to see the dentist on February 14, 2017, and the dental assistant informed him he would get an appointment slip for the next day. He did not get the slip. There is a notation that he was seen on

February 22, 2017. (ECF No. 29-2 at 2.)

On February 22, 2017, Kemp saw the dentist and had a full mouth x-ray and exam. It was noted that his teeth were generally in good condition. There is a notation for composites for teeth 7, 8, 9, 10 and 11. It appears that extraction was recommended for tooth 18. (ECF No. 29-4 at 59; ECF NO. 29-5 at 2-3; ECF N. 29-7 at 3.) [2]

On April 12, 2017, Plaintiff sent a kite requesting that his cavities be filled. There is a stamp that says the kite was received and Plaintiff was on the list for a dental appointment. There is also a note dated December 8, 2018, stating that Plaintiff had discomfort due to occlusal trauma of #14. He was rescheduled for fillings and Plaintiff agreed to schedule these the week of December 10, 2018. There is also a note that he received treatment for his teeth on December 10, 2018. (ECF No. 29-4 at 34.)

**B. Statute of Limitations & Poag**

Section 1983 does not contain its own statute of limitations; therefore, federal courts borrow the statute of limitations for section 1983 claims applicable to personal injury claims in the forum state. *See Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and therefore section 1983 actions brought here, is two years. Nev. Rev. Stat. 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

Defendants argue that according to the complaint, Poag initially became aware of Plaintiff's allegations in mid-2001. Poag's involvement ended with Poag informing Plaintiff he

---

[2] In the future, defense counsel need only file the *relevant* medical and grievance records and not every medical kite and grievance a plaintiff has ever submitted. The filing can be accompanied by a declaration of the person who has reviewed the documents to state that all of the relevant kites, medical records or grievances have been submitted.

1  was on the list to be seen in 2003 and instructed him to stop kiting. Thus, they contend that any
2  claim against Poag accrued by 2003, and so Plaintiff had to bring his action in 2005, absent
3  equitable tolling. On January 26, 2016, 15 years after Poag's response, Plaintiff filed his informal
4  level grievance.

5  In his response, Plaintiff states that he did not even include Poag as a defendant in the
6  complaint, but the screening order did. Plaintiff acknowledges that "the statute of limitations ran
7  out on him [Poag] a long time ago." (ECF No. 39 at 6; *see also* ECF No. 39 at 12.)

8  The screening order states that while Plaintiff did not identify Poag as a defendant, the
9  court interpreted the allegations of the complaint as treating Poag as a defendant. (ECF NO. 4 at
10 6, n. 1.) Plaintiff now states that he did not intend to include Poag as a defendant.
11 Moreover, Plaintiff acknowledges that any claim against Poag would be barred by the statute of
12 limitations.

13 Since Plaintiff did not intend to include Poag as a defendant, and in any event, claims
14 against him are barred by the statute of limitations, summary judgment should be granted in
15 Poag's favor.

16 **C. Deliberate Indifference vs Egerton and Donnelly**

17 "The government has an 'obligation to provide medical care for those whom it is
18 punishing by incarceration,' and failure to meet that obligation can constitute an Eighth
19 Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th
20 Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

21 A prisoner can establish an Eighth Amendment violation arising from deficient medical
22 care if he can prove that prison officials were deliberately indifferent to a serious medical need.
23 *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two

elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Plaintiff alleges that he filed grievance 2006-30-15796, about his dental care, on

1  January 24, 2016, and included kites and responses where he asked to be seen by a dentist. That
2  grievance was denied at all three levels. Plaintiff avers that he put in another kite to be seen, and
3  was told he was scheduled, but was ignored. Then, on November 11, 2018, he filed a second
4  grievance, 2006-30-74126, where he attached his original copy of grievance 2006-30-15796,
5  with the kites and responses. Plaintiff alleges that Egerton, with Donnelly's approval, removed
6  grievance 2006-30-15796 and the exhibits that he had attached to grievance 2006-30-74126. As a
7  result, Plaintiff filed a third grievance, 2006-30-77185, requesting the documents and exhibits for
8  grievance 2006-30-15976 be returned to him. Egerton and Donnelly responded that no
9  documents or exhibits were removed. Plaintiff claims that the removal of these documents was to
10 cover up their deliberate indifference. (ECF No. 5 at 6-7.)

11       The court liberally construed these allegations as asserting an Eighth Amendment claim
12 against Egerton and Donnelly. (ECF No. 4 at 6.)

13       Defendants contend that there is no evidence that Egerton removed any exhibits from
14 Plaintiff's grievances, or that Donnelly approved this.

15       In his response, Plaintiff maintains that Egerton did remove the grievance 2006-30-15976
16 with kite responses from his other grievance and that this violated the law. Plaintiff, however,
17 does not provide any *evidence* to support this claim. Instead, he only offers his speculation that
18 this was the case. Moreover, Plaintiff does not argue how even if Egerton did remove grievance
19 2006-30-15976 from his second grievance, how this denied him dental care. He does not assert
20 that grievance 2006-30-15976 and its exhibits was completely gone from his grievance file. Nor
21 does he contend that the kites and responses were removed from his institutional medical/dental
22 records. Instead, he only alleges that Egerton removed it as an attachment to another grievance.
23

Plaintiff was still free to file additional kites as well as grievances to complain about his dental care.

Additionally, Plaintiff points to no *evidence* that Donnelly and Egerton had any involvement in his dental care, in the form of kites or otherwise.

Therefore, summary judgment should also be granted in favor of Donnelly and Egerton.

In light of this conclusion, the court need not reach Defendants' other arguments.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 27).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 25, 2021

*William G. Cobb*
William G. Cobb
United States Magistrate Judge